L. F. Gran and Estate of Florence Gran, Deceased, L. F. Gran, Executor v. Commissioner.
Gran v. Commissioner
Docket No. 45454.
United States Tax Court
T.C. Memo 1955-79; 1955 Tax Ct. Memo LEXIS 257; 14 T.C.M. (CCH) 260; T.C.M. (RIA) 55079; April 7, 1955
*257 Held: Upon the cancellation by a corporation of a debt owed by the taxpayer to the corporation, petitioner received taxable income. Lawrence H. Nichols, Esq., and Albert J. Sievers, C.P.A., 176 West Wisconsin Avenue, Milwaukee, Wis., for the petitioners. Robert R. Veach, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioners' income tax for the year 1949 in the amount of $3,759.87. Of two adjustments made in petitioners' taxable income, only one is in dispute. This alleged error involves the inclusion by respondent in income of $7,488.67, which figure represents the cash surrender value of two insurance policies transferred to petitioner Gran in 1943. *258 The account was carried on the corporate books thereafter as an account receivable and was written off in 1949. Findings of Fact Petitioners are L. F. Gran and the estate of his deceased wife and hereinafter will be referred to as Gran and his wife. They filed their returns with the collector of internal revenue for the first district of Wisconsin in Milwaukee. Gran was employed for many years as the general manager of Standard Theatres, a Wisconsin corporation, in which he and his wife were major shareholders. The corporation was the owner of two insurance policies on Gran's life, each in the face amount of $50,000, upon which it paid the premiums. In 1943, the corporation transferred ownership of the policies to Gran. The debt to the corporation arising upon the transfer of the policies was recorded and carried on the corporate books as an account receivable owed by Gran to the corporation in the amount of $7,488.67, which figure represented the cash surrender value of the policies. Gran later conveyed them to his wife and she paid all subsequent premiums. In the process of a reorganization in 1944, certain assets were transferred from the Standard corporation to a successor *259 named the Bay Theatres Corporation, in which Gran and his wife became principal shareholders and Gran the general manager. Among the transferred assets was the account receivable owed by Gran. This receivable was duly entered upon the successor's books as such and was re-entered and carried in the same manner for each of the next succeeding five years. In 1949, Gran and his wife sold their interests in the Bay Theatres Corporation but he retained his management position. Later in that same year, Gran's account receivable was written off to surplus upon instructions of the new principal shareholders. Neither the Standard nor the Bay Theatres Corporation had ever taken an expense deduction in respect of the policy transfer or the write-off. Upon the death of Gran's wife, the policies were included as assets of her estate and taxes were paid in respect of them. Respondent determined that the chargeoff in 1949 was a cancellation of indebtedness and constituted taxable income to Gran in that year, resulting in a deficiency in the amount of $3,759.87. Petitioner contends that a debt never arose but that the transfer in 1943 was a gift to his wife and that the various account receivable *260 entries in the corporate books were accounting errors. Opinion VAN FOSSAN, Judge: The issue may be posed in a single question. Did the original transfer of the policies give rise to a gift, or create a debt, which, upon later cancellation, constituted taxable income to the petitioner? If income was realized, it occurred in 1949, the year of the write-off, and the 1939 Code, as amended, is the applicable law. The particular provision with which we are concerned is section 22(a), which provides, in effect, that gross income includes gain, profit and income derived from any source whatever. [1] Also involved is Regulations 111, section 29.22(a)-13, which states that "a cancellation of indebtedness may result in a realization of taxable income." An analysis of the facts which existed at the time of the original transfer makes it clear that the transfer to Gran in 1943 gave rise to a debt which subsisted as such until 1949, and, when canceled, gave rise to taxable income. The facts indicate that at the time of the conveyance *261 an employer-employee relationship existed between the parties. Moreover, Gran and his wife were major shareholders of the transferor. Although the corporate resolution is devoid of a stated motive for the assignment, it must be concluded that it was of a business character. The recording of the transfer on the corporate books as an account receivable and the absence of a gift tax return in respect of it are directly contrary to the contention that a gift was intended. The original transfer was made to Gran and his later transfer to his wife merely indicates a gift of property between spouses. The fact that upon her death the policies were included as assets of her estate does not detract from that conclusion. The contention that the entry as an account receivable was merely an accounting error is not persuasive and is not consistent with other facts. The original entry as an account receivable indicated a debtorcreditor relationship. It was transferred as such from one corporation to another as an asset in a reorganization and carried on the books in the same manner for five succeeding years. Gran was the secretary-treasurer and general manager of the successor corporation yet he *262 testified that he could not correct the error because he did "not have authority." It is difficult to believe that such a corporate officer lacked the power to correct what is claimed to be merely an error in accounting. Moreover, the certified public accountant who, in 1949, charged the account off to surplus, testified that his entry was not in the nature of an error correction but that "it was just an entry." Likewise, the circumstances surrounding the cancellation bear out the business character of the transfer. Gran and his wife had only a short time before sold their block of stock and it was the new principal shareholders who ordered the cancellation. Whether this stock sale supplied a motive for the writeoff, we are not called upon to decide. The fact remains that an existing debt was writen off and respondent's determination that petitioner realized taxable income is correct. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes * * * or gains or profits and income derived from any source whatever. * * *↩